**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-3013
_____

UNITED STATES OF AMERICA

v.

CARLOS ALBERTO CUEVAS-ALMONTE,
                                        Appellant
_____

On Appeal from the District Court of the Virgin Islands
(D.C. No. 3:19-cr-00076-002)
District Judge: Hon. Robert A. Molloy
_____

Argued April 29, 2025

Before: RESTREPO, FREEMAN, McKEE, *Circuit Judges*

(Filed: October 14, 2025)

Joseph A. DiRuzzo, III      [ARGUED]
MARGULIS GELFAND DIRUZZO & LAMBSON
401 E Las Olas Boulevard, Suite 1400
Ft. Lauderdale, FL 33301
    *Counsel for Appellant*

Delia L. Smith
Adam Sleeper [ARGUED]
U.S. DEPARTMENT OF JUSTICE
OFFICE OF UNITED STATES ATTORNEY
5500 Veterans Drive
United States Courthouse, Suite 260
St. Thomas, VI 00802
    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

RESTREPO, *Circuit Judge*

Carlos Alberto Cuevas-Almonte was arrested on the high seas and charged in the District of the Virgin Islands with multiple drug trafficking offenses under the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. § 70501 et seq. In a flurry of pretrial motions, Cuevas-Almonte sought to have his case dismissed for improper venue, arguing that the MDLEA's "any district" venue provision was unconstitutional, and that proper venue laid in the District of Puerto Rico. *See* 46 U.S.C. § 70504(b)(2). He also requested a pretrial evidentiary hearing on venue and the issuance of subpoenas for ten Coast Guard witnesses. After the District Court denied the motions, Cuevas-Almonte entered into a conditional guilty plea preserving his right to appeal, among

other things, the District Court's venue determination and its refusal to hold an evidentiary hearing on venue.

On appeal, Cuevas-Almonte renews his constitutional challenge to Section 70504(b)(2) and challenges the District Court's refusal to hold an evidentiary hearing on venue. As we explain below, his constitutional challenge fails under the plain text of the Constitution and binding Supreme Court precedent. For that reason, and because the District Court did not abuse its discretion in denying him a pretrial evidentiary hearing on venue, we will affirm.

## I.     BACKGROUND

### A. Cuevas-Almonte is arrested and charged.

On October 24, 2019, a United States Customs and Border Protection air unit detected a "go-fast" vessel in international waters some 75 nautical miles south of Cabo Rojo, Puerto Rico. Upon interdiction by the United States Coast Guard ("USCG") Cutter *Diligence*, the vessel remained in international waters and displayed no indicia of nationality. When the vessel's two occupants—later identified as Carlos Alberto Cuevas-Almonte and his co-defendant—became aware of the Coast Guard's pursuit, they began jettisoning bales overboard and failed to comply with orders to heave to.[1] After agents fired warning shots, the vessel died in the water 33 nautical miles south of Cabo Rojo, Puerto Rico, where the Coast Guard then established control. When questioned, both

---

[1] "[T]he term 'heave to' means to cause a vessel to slow, come to a stop, or adjust its course or speed to account for the weather conditions and sea state to facilitate a law enforcement boarding." 18 U.S.C. § 2237(e)(2).

3

men claimed to be in charge of the vessel, yet neither asserted a nationality. The Coast Guard recovered ten bales from the water that together contained about 306 kilograms of cocaine. Six days later, the *Diligence* transferred Cuevas-Almonte and his co-defendant to the USCG Cutter *Charles David Jr.*, which transported them to St. Thomas in the U.S. Virgin Islands. According to the government, the defendants were never brought to Puerto Rico—a fact Cuevas-Almonte disputes.

On November 21, 2019, a grand jury in the District of the Virgin Islands returned a three-count indictment charging Cuevas-Almonte and his co-defendant with committing these offenses while "upon the high seas": (1) conspiracy to possess with intent to distribute a controlled substance while on board a vessel subject to the jurisdiction of the United States; (2) possession of a controlled substance with intent to distribute while on board of a vessel subject to the jurisdiction of the United States and aiding and abetting; and (3) destroying, attempting to destroy, or conspiring to destroy property subject to forfeiture under Section 511(a) of the Comprehensive Drug Abuse Prevention and Control Act of 1970.[2] Nearly a year later, the grand jury returned a superseding indictment— striking the original Count One, renumbering the remaining charges as Counts One and Two, and adding as Count Three a failure to heave to charge in violation of 18 U.S.C. §§ 2237(a)(1) and (2).

---

[2] *See* 46 U.S.C. §§ 70502(c)(1)(A); 70503(a)(1)–(2); 70504(b)(2); 70506(a), (b), and (d).

4

**B. Cuevas-Almonte moves to dismiss for improper venue.**

After the initial indictment, but before the superseding indictment, Cuevas-Almonte moved to dismiss for improper venue.[3]   In that motion, he raised a "manufactured venue" theory that alleged the government manufactured venue by bypassing Puerto Rico, despite the vessel's proximity to its territorial waters, and instead transported him "past the cities of Ponce, Salina [sic], Guayma [sic], and the islands of Vieques and Culebra" en route to the U.S. Virgin Islands. SA16. There, he argued, defendants face substantially longer sentences for drug trafficking—a claim he sought to substantiate through testimonial evidence at a requested evidentiary hearing.  The government opposed the motion, disputing his manufactured venue theory on several grounds and invoking 46 U.S.C. § 70504(b)(2) to support venue in the Virgin Islands.

Section 70504(b)(2) provides that a person who is charged with drug trafficking under the MDLEA "may be tried in any district" if the offense "was begun or committed upon the high seas, or elsewhere outside the jurisdiction of any particular State or district."  In his reply, Cuevas-Almonte argued that he was, in fact, first brought within Puerto Rico's territorial waters, citing the transfer of the recovered narcotics from the *Diligence* to the Drug Enforcement Agency before he was transferred to the *Charles David Jr.*  On that basis, he claimed that under 18 U.S.C. § 3238, venue properly lay in the

---

[3]   Cuevas-Almonte also moved, in the alternative, to transfer venue under Rule 21 of the Federal Rules of Criminal Procedure but expressly waived any challenge to the denial of that motion in his plea agreement.

5

District of Puerto Rico because he was first brought into its territorial waters.[4]

Separately, Cuevas-Almonte moved to declare 46 U.S.C. § 70504(b)(2) unconstitutional, asserting that its venue provision violates both Article III of the Constitution and the Sixth Amendment. Framing his challenge as both facial and as-applied, he argued that prosecution in the Virgin Islands was unconstitutional because he was first brought to Puerto Rico. After the return of the superseding indictment, Cuevas-Almonte reasserted his constitutional challenge and amended his motion to dismiss for improper venue. While otherwise identical to the original filing, the amended motion also sought dismissal of the failure to heave to count, asserting that venue for that charge—governed by 18 U.S.C. § 3238—was also improper because he was first brought to Puerto Rico.

The District Court agreed with the government and collectively denied Cuevas-Almonte's motions addressing venue. It held that 46 U.S.C. § 70504(b)(2) was constitutional and provided venue in the Virgin Islands for the MDLEA charges. As to the failure to heave to charge, the court determined venue was proper under 18 U.S.C. § 3238, finding that the Virgin Islands was where Cuevas-Almonte was first brought, and that—even assuming he transited Puerto Rico's territorial waters—such passage, without landing, did not constitute being "first brought" into that district under the statute. The court also rejected his manufactured venue claim,

_____

[4] Section 3238 provides that "[t]he trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender . . . is arrested or is first brought . . . ."

finding he failed to raise a colorable argument that the government routed him to the Virgin Islands to secure a harsher sentence.

### C. Cuevas-Almonte moves to subpoena Coast Guard witnesses.

In advance of an omnibus hearing, Cuevas-Almonte filed an *ex parte* motion seeking a certificate under 28 U.S.C. § 1825(a)(2) and an order directing the United States Marshal to serve trial subpoenas on five USCG personnel to testify at the hearing and at trial. In an *ex parte* order, the Magistrate Judge denied the motion, finding that Cuevas-Almonte flouted Fed. R. Crim. P. 17(b). After the omnibus hearing was rescheduled, Cuevas-Almonte renewed the *ex parte* motion, attaching proposed subpoenas for ten Coast Guard witnesses. The District Court denied Cuevas-Almonte's motion for failure to comply with the Department of Homeland Security's applicable *Touhy* Regulations, 6 C.F.R. §§ 5.41, et seq. In response, Cuevas-Almonte moved to declare DHS's *Touhy* Regulations inapplicable, or in the alternative, to declare their enabling statute, 5 U.S.C. § 301, unconstitutional and invalidate the regulations. The District Court denied the motion, and we dismissed his interlocutory appeal for lack of appellate jurisdiction. *United States v. Cuevas-Almonte*, No. 23–1300, 2024 WL 3886667, at *1 (3d Cir. Mar. 15, 2024) ("In a criminal case, appellate review is generally prohibited until after convicted and imposition of sentence.").

### D. Cuevas-Almonte enters into a conditional plea agreement.

Ultimately, Cuevas-Almonte entered a conditional guilty plea, reserving the right to appeal the denial of his venue

7

motions only insofar as the order rejected his argument that the Virgin Islands was an improper venue. The written agreement also conditionally preserved his right to appeal the orders denying his *Touhy* motion and his second renewed subpoena motion. Specifically, the parties agreed that those orders were "only material and would only provide a basis for withdrawing from the plea agreement" if we determined on appeal that "the District Court erred in not holding a pretrial hearing on one of the other motions" and that error was not harmless. JA136. "[A]bsent such a determination, any error in denying [those motions] was harmless[,]" so we need not reach the issue. *Id.* Cuevas-Almonte pleaded guilty to Count One of the superseding indictment and was sentenced to 46 months' imprisonment. He then filed this timely appeal.

## II.    DISCUSSION[5]

### A. The District Court did not abuse its discretion in denying a pretrial evidentiary hearing on venue.

We begin by considering the District Court's order denying a pretrial evidentiary hearing regarding the propriety of venue. Generally, we review a district court's denial of an evidentiary hearing for abuse of discretion. *United States v. Hines*, 628 F.3d 101, 104 (3d Cir. 2010). We see no reason to depart from this standard in the context of a motion to dismiss for improper venue. *See United States v. Snipes*, 611 F.3d 855, 865 (11th Cir. 2010) (reviewing for abuse of discretion the denial of an evidentiary hearing to challenge venue that would

---

[5] The District Court had subject matter jurisdiction under 48 U.S.C. § 1612(a) and 18 U.S.C. § 3231. We exercise jurisdiction under 28 U.S.C. § 1291.

8

amount to "essentially, a bench trial"). "A district court abuses its discretion if its decision rests on an incorrect legal standard, a clearly erroneous factual finding, or a misapplication of the law to the facts." *Benezet Consulting LLC v. Sec'y Commonwealth of Pa.*, 26 F.4th 580, 584 (3d Cir. 2022) (quoting *TD Bank N.A. v. Hill*, 928 F.3d 259, 270 (3d Cir. 2019)).

Below, Cuevas-Almonte generally argued that venue was improper in the Virgin Islands because he was first brought to Puerto Rico. Yet his factual account of the transfer shifted repeatedly across his moving papers. In his initial motion to dismiss for improper venue, he asserted that he was taken to the Virgin Islands instead of Puerto Rico, with the vessel passing "the cities of Ponce, Salina [sic], Guayma [sic], and the islands of Vieques and Culebra." SA16. He tied this account to his "manufactured venue" theory. Two weeks later, in his motion to declare 46 U.S.C. § 70504(b)(2) unconstitutional, he alleged a different sequence: the first Coast Guard vessel transported him to Puerto Rico's territorial waters, where he was then transferred to the vessel that brought him to the Virgin Islands.

Nearly two months after that, he offered yet another account, claiming the first vessel brought him into Puerto Rico's territorial waters while delivering the cocaine to the Drug Enforcement Agency. Nearly a year after his initial motion to dismiss, he contradicted himself in consecutive pages of his amended motion, stating he was first brought to Puerto Rico *and* the Virgin Islands. Neither party disputes that Cuevas-Almonte was transferred between government vessels during the voyage from the high seas to the Virgin Islands; the only question Cuevas-Almonte posed was where.

9

The District Court denied Cuevas-Almonte's venue-related motions without a hearing, concluding that 46 U.S.C. § 70504(b)(2) was constitutional and therefore laid proper venue in the Virgin Islands for the MDLEA counts. As to the failure to heave to charge, the District Court held venue was proper under 18 U.S.C. § 3238, explaining that Cuevas-Almonte was first brought to the Virgin Islands, and that—even assuming he transited Puerto Rico's territorial waters—such passage, without landing, did not constitute being "first brought" into that district under the statute. On appeal, Cuevas-Almonte contends a pretrial evidentiary hearing on venue was necessary to resolve what he characterizes as a factual dispute over whether he was "first brought" to Puerto Rico. Yet in his moving papers below, the only articulated purpose of such a hearing was to present testimonial evidence that the government's choice of venue was manufactured with intent to expose him to allegedly harsher drug-trafficking sentences. Only now, after the District Court rejected that claim, does he recast his request as necessary to resolve where on his voyage the government transferred him between vessels—a purported factual dispute said to bear on the district into which he was "first brought."

In denying Cuevas-Almonte's motion to dismiss for improper venue, the District Court rejected his contention that he was first brought to Puerto Rico. It explained that Cuevas-Almonte offered "no legal authority for the proposition" that being transported through Puerto Rican territorial waters meant he was first brought there. *United States v. Ramos–Guerra*, No. 3:19–CR–0076, 2023 WL 1778338, at *4 n.5 (D.V.I. Feb. 6, 2023). Finding no "evidence demonstrating or suggesting that [he was] first brought or arrested in Puerto Rico," the

10

District Court held that 18 U.S.C. § 3238 allowed for the case to be tried in the Virgin Islands. *Id.* at *4.

Rule 12(b)(3) of the Federal Rules of Criminal Procedure requires that all "defects in the institution of the prosecution" be raised by pretrial motion, but evidentiary hearings on such motions are not granted as a matter of course. *See* Fed. R. Crim. P. 12(c) (providing that district courts "may" schedule a motion hearing). Although Rule 12 does not specify when a defendant is entitled to a pretrial evidentiary hearing, we have held that a defendant's moving papers must demonstrate a "colorable claim" for relief. *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1993). A "colorable" claim requires more than "mere bald-faced allegations," it must present "issues of fact material to the resolution of the defendant's . . . claim." *Id.* That is, a defendant may receive an evidentiary hearing only if the moving papers are "sufficiently specific, non-conjectural, and detailed to enable the court to conclude that . . . there are disputed issues of material fact that *will affect the outcome* of the motion." *United States v. Fattah*, 858 F.3d 801, 810 (3d Cir. 2017) (quoting *Hines*, 628 F.3d at 105) (emphasis added). The purpose of a hearing "is not to assist the moving party in making discoveries that, once learned, might justify the motion after the fact." *Hines*, 628 F.3d at 105.

Although the District Court addressed only one of Cuevas-Almonte's several speculative theories regarding his transfer from the high seas to the Virgin Islands, it nonetheless rejected the general proposition that mere presence in Puerto Rico's territorial waters was legally sufficient to have been "first brought" there. The factual accounting now emphasized on appeal—that he was transferred to another government vessel while in Puerto Rican territorial waters—likewise would

11

not alter the outcome of his motion under the District Court's interpretation of 18 U.S.C. § 3238. Each of his factual accounts share the same underlying theory—that entering a district's territorial waters on a Coast Guard ship, without ever landing or stepping foot in the district, means he was first brought there.

In that light, Cuevas-Almonte's contention that the District Court abused its discretion could only succeed were we to find as a threshold matter it rested on an incorrect legal standard. We do not. In explaining that mere transit through a district's territorial waters is not enough to render a defendant "first brought" there, the District Court cited a First Circuit case addressing the issue. *See Chandler v. United States*, 171 F.2d 921, 933 (1st Cir. 1948) (finding that defendant was not brought into a district when he flew through its airspace because "[i]n the analogous situation of transit through the territorial waters of a district, without landing, the cases say that such district is not the district into which the accused was 'first brought'"). This issue would be one of first impression for this Court, but it is not properly teed up for resolution here. That said, the standard applied by the District Court is supported by the sparse case law on the issue.[6] Accordingly,

---

[6] *See, e.g.*, *Pedersen v. United States*, 271 F. 187, 189–90 (2d Cir. 1921) (holding venue was proper in the Southern District of New York where defendants had been brought by ship and arrested because "a temporary stop [at a quarantine station] did not constitute a bringing into the Eastern [D]istrict of New York"); *United States v. Arwo*, 86 U.S. 486 (1873) (holding a defendant could be tried in the Southern District of New York despite being held in irons for five days aboard a ship anchored within the Eastern District).

the District Court's conclusion did not rest on an erroneous view of the law and we perceive no abuse of discretion.

Given the absence of any precedent supporting Cuevas-Almonte's legal position even if he proved his factual account, we conclude the District Court reasonably denied a hearing that would not affect the outcome of his motion to dismiss. What is more, his moving papers were non-specific and conjectural, and the "hearing would only assist [him] in making discoveries that, once learned, might justify the motion after the fact." *Hines*, 628 F.3d at 105. Accordingly, we hold that the District Court did not abuse its discretion in denying the novel evidentiary hearing on venue.[7]

Under Cuevas-Almonte's plea agreement, any error in the District Court's denial of his subpoena motions would only provide a basis for withdrawal if we also found error in its refusal to hold a pretrial venue hearing. Because we find no such error, we need not address those orders.

---

[7] Cuevas-Almonte also contends that the District Court improperly shifted the burden of proof on venue onto him in violation of his due process rights. This argument lacks any merit. At this pretrial stage, the District Court merely declined a hearing because it determined Cuevas-Almonte's moving papers failed to raise a factual dispute that would affect the outcome of his venue motion. This discretionary determination had no effect on the burden of proof at trial, where the Government would have borne the burden of establishing venue by a preponderance of the evidence. *See United States v. Heatherly*, 985 F.3d 254, 263 (3d Cir. 2021).

**B. The District Court did not err in rejecting Cuevas-Almonte's constitutional argument that venue in the Virgin Islands is improper.**

When reviewing a motion to dismiss an indictment, including one challenging venue, we exercise plenary review over a district court's legal conclusions and review factual findings for clear error. *United States v. Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011) (citing *United States v. Shenandoah*, 595 F.3d 151, 156 (3d Cir. 2010)). We exercise plenary review over the district court's determination as to the constitutionality of the challenged statute. *United States v. Parker*, 108 F.3d 28, 29 (3d Cir. 1997) (citing *United States v. Rybar*, 103 F.3d 273, 275 (3d Cir. 1996)).

Count One charged Cuevas-Almonte with drug trafficking under Section 70503 of the MDLEA. Under the conditional plea agreement, he preserved the right to appeal the District Court's rejection of his argument that venue is improper because the MDLEA's venue provision, which provides for venue in "any district," is unconstitutional, both facially and as-applied.[8] 46 U.S.C. § 70504(b)(2). On appeal, Cuevas-Almonte renews his argument that the "text, history,

---

[8] We need not review the District Court's rejection of Cuevas-Almonte's venue argument as to Count Three because we conclude it was not preserved in his conditional plea agreement. Cuevas-Almonte pled guilty only to Count One and preserved his right to appeal the order rejecting his venue motions "only insofar as the order rejects [his] argument that the U.S. Virgin Islands is an improper venue." JA136. Thus, we review the District Court's order only insofar as it rejects his argument that venue is improper as to the count he pled guilty to.

14

and tradition of the venue provisions of the Constitution, and the attendant statutory provisions" render Section 70504(b)(2) unconstitutional. Appellant's Br. at 17. He urges us to apply the historical approach employed by the Supreme Court in certain other contexts to his unprecedented challenge.[9] That type of historical analysis, he argues, would reveal that "any district is so expansive" that "it stretches Art. III, §2 cl. 3 and the Sixth Amendment beyond their respective breaking points." *Id.*

In seeking to persuade this Court to invalidate a federal statute, Cuevas-Almonte invokes "the gravest and most delicate duty that this Court is called on to perform." *Blodgett v. Holden*, 275 U.S. 142, 148 (1927) (Holmes, J., concurring). "Proper respect for a coordinate branch of the government requires that we strike down an Act of Congress only if the lack of constitutional authority to pass the act in question is clearly demonstrated." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012) (citation and internal quotation marks omitted). We begin with the premise that "[e]very legislative act is to be presumed to be a constitutional exercise of legislative power until the contrary is clearly established." *Close v. Glenwood Cemetery*, 107 U.S. 466, 475 (1883).

A facial challenge attacks a statute's constitutionality based on its text alone, without consideration of the facts or circumstances of a particular case. *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (citing *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 n.11 (1988)). That is, in asserting his facial challenge, Cuevas-

---

[9] *See, e.g.*, *N.Y. State Rifle & Pistol Ass'n Inc. v. Bruen*, 597 U.S. 1 (2022); *Hemphill v. New York*, 595 U.S. 140 (2020); *United States v. Rahimi*, 602 U.S. 680 (2024).

Almonte must establish "that no set of circumstances exists under which the [statute] would be valid, *i.e.,* that the [statute] is unconstitutional in all of its applications."[10]  *Id.* (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)).  The Supreme Court has repeatedly emphasized that facial challenges are disfavored—particularly where, as here, they rest on undeveloped factual records or require speculation on hypothetical applications.  *See, e.g.*, *Wash. State Grange*, 552 U.S. at 450–51 (noting that facial challenges are disfavored because, in part, they "threaten to short circuit the democratic process"); *Sabri v. United States*, 542 U.S. 600, 608–10 (2004) (noting that "facial challenges are best when infrequent," particularly when they "invite judgments on fact-poor records").  Ultimately, such challenges "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Wash. State Grange*, 552 U.S. at 450–51 (inner quotation marks omitted) (quoting *Ashwander v. TVA*, 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring)).

An as-applied challenge, by contrast, "does not contend that a law is unconstitutional as written but that its application

---

[10] Whether 48 U.S.C. § 70504(b)(2) might operate unconstitutionally under some conceivable set of circumstances is not enough to render it wholly invalid, as we do not recognize the "overbreadth" doctrine outside the First Amendment context.  *See United States v. Barton*, 633 F.3d 168, 172 n.3 (3d Cir. 2011) (citing *Schall v. Martin*, 467 U.S. 253, 268 n.18 (1984)).

16

to a particular person under particular circumstances deprived that person of a constitutional right." *Marcavage*, 609 F.3d at 273 (citing *Wis. Right to Life, Inc. v. Fed. Election Comm'n*, 546 U.S. 410, 411–12 (2006)). When that occurs, the particular provision more narrowly offends the Constitution and should "thus be declared invalid to the extent that it reaches too far, but otherwise be left intact." *Khouzam v. Att'y Gen.*, 549 F.3d 235, 258 (3d Cir. 2008) (quoting *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328 (2006)). The distinction, then, between a facial and as-applied challenge goes to the scope of the statute's claimed constitutional infirmity and the breadth of the remedy sought. *Marcavage*, 609 F.3d at 273 (citing *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010)).

We begin with Cuevas-Almonte's as-applied constitutional challenge to the MDLEA's "any district" venue provision. *See United States v. Mitchell*, 652 F.3d 387, 406 (3d Cir. 2011) (analyzing appellant's as-applied challenge before his facial challenge). To prevail on his as-applied challenge, Cuevas-Almonte must show that "under [these] particular circumstances [he was] deprived . . . of a constitutional right." *Id.* (quoting *Marcavage*, 609 F.3d at 273) (alterations in original). Of course, if Cuevas-Almonte's as-applied challenge fails because the statute was constitutionally applied to him, his facial challenge must likewise fail, for the statute is not unconstitutional in all its applications.

Proper venue in criminal trials is more than just a procedural requirement—it is a safeguard guaranteed twice in the United States Constitution. *United States v. Baxter*, 884 F.2d 734, 736 (3d Cir. 1989) (citations omitted). Article III, section two, clause three of the Constitution requires that "[t]he Trial of all Crimes . . . shall be held in the State where the said

17

Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed." U.S. Const. Art. III, § 2, cl. 3. In addition, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. Const. amend. VI. Congress further embedded this venue guarantee into Rule 18 of the Federal Rules of Criminal Procedure, requiring that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18.

On appeal, Cuevas-Almonte renews his as-applied challenge by asserting that his prosecution in the Virgin Islands deprived him of constitutional rights under Article III, section 2, clause 3 and the Sixth Amendment. In doing so, he frames Section 3238 as embodying the constitutional limitations imposed by the Venue and Vicinage clauses—which, he contends, constrained venue to Puerto Rico as his passage through its territorial waters made it the district where he was first brought. Thus, he argues that the "any district" provision of Section 70504(b)(2) operated unconstitutionally as applied to him by impermissibly expanding the venue limitations the Constitution imposes on the government, permitting trial in the Virgin Islands when, in his view, venue was confined to Puerto Rico.

We begin with the observation that the plain text of the Venue Clause evinces no restriction on the number of places Congress may designate for trial when an offense is not committed within any State. Offenses on the high seas are, by

18

definition, "not committed within any State," and the clause accordingly provides that trial "shall be at such Place or Places as the Congress may by Law have directed." U.S. Const. Art. III, § 2, cl. 3. More than a century ago, the Supreme Court endorsed this reading in *Cook v. United States*, where Justice Harlan explained:

> [T]he contention of the defendants is, in effect, that in respect to crimes committed outside of the states in some place within the exclusive jurisdiction of the United States, congress is forbidden by the second section of article 3 of the constitution from providing a place of trial different from the one in which the accused might have been tried at the time the offense was committed. We do not so interpret that section. The words, 'the trial shall be at such place or places as the congress may by law have directed,' *impose no restriction as to the place of trial*, except that the trial cannot occur until congress designates the place, and may occur at any place which shall have been designated by congress previous to the trial.

138 U.S. 157, 182 (1891) (emphasis added); *see also Zicarelli v. Dietz*, 633 F.2d 312, 324–26 (3d Cir. 1980) (citing *Cook* for the proposition that "when an offense was not committed within a state," Congress may prescribe venue under Article

19

III, section 2, clause 3 without limitation from the Sixth Amendment). We are duty-bound to give full effect to this precedent. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.") (citation omitted). [11] In doing so, we adhere to a fundamental principle of judicial restraint not to "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Wash. State Grange*, 552 U.S. at 450–51 (quoting *Ashwander v. TVA*, 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring)).

A plain reading of the Vicinage Clause likewise reveals no restriction on Congress's power to designate venue for crimes committed on the high seas. That clause guarantees "the right to . . . an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. Const. amend. VI. As Justice Harlan explained in *Cook*, that "amendment has reference only to offences against the United States committed *within* a State." *Cook*, 138 U.S. at 181 (citing *United States v. Dawson*, 56 U.S. 467, 487-88 (1853))

---

[11] This Circuit has steadfastly applied the *Agostini* doctrine. *See, e.g.*, *United States v. Singletary*, 268 F.3d 196, 205 (3d Cir. 2001) (quoting *Agostini* and noting that "[w]e have always sought to adhere to that counsel"); *United States v. Extreme Assocs., Inc.*, 431 F.3d 150, 155–56 (3d Cir. 2005) (stressing, at length, that the Third Circuit cannot ignore a Supreme Court case directly on point unless that case has been completely abrogated).

(emphasis added); *see also Smith v. United States*, 599 U.S. 236, 245 (2023) ("[T]he Vicinage Clause . . . concerns jury composition, not the place where a trial may be held."). If a crime is *not* committed *within* any State, "the trial may be wherever within the jurisdiction of the United States the Congress shall by law direct." *Dawson*, 56 U.S. at 484.

Cuevas-Almonte asks us to ignore the plain text of the Venue and Vicinage clauses and graft onto them a limitation on venue for high seas offenses. He grounds this argument in the Crimes Act of 1790, enacted by the First Congress, which provided that trial for such offenses "shall be in the district where the offender is apprehended, or into which he may first be brought." Ch. 9, § 8, 1 Stat. 112, 114 (1790). Congress has since codified that provision's modern progeny as Section 3238. Until 2017 the MDLEA's venue provision likewise provided venue to the district where the accused was first brought. Pub. L. No. 109-304, § 10(2), 120 Stat. 1485, 1688 (2006). Thus, Cuevas-Almonte maintains that until 2017, there were "227 years of unbroken history . . . indicat[ing] that the Constitution's venue provisions . . . limit[] the venue for crimes committed on the high seas to one ascertainable district." Appellant's Br. at 17.

This argument fails for several reasons. First, it is factually inaccurate, as Section 3238 has also provided for venue in "the district of the last known residence of the offender or . . . in the District of Columbia" since 1948. Act of June 25, 1948, Pub. L. 772, ch. 645, 62 Stat. 683, 826 (codified as 18 U.S.C. § 3238). Second, it inappropriately invites us to "assume[] that founding-era legislatures maximally exercised their power to regulate, thereby adopting a 'use it or lose it' view of legislative authority." *United States v. Rahimi*, 602 U.S. 680, 739–40 (2024) (Barrett, J., concurring). And third,

21

most importantly to our holding, adopting his position would require us to disregard the Supreme Court's decision in *Cook*, which squarely interpreted the Constitution's venue provisions and has not been abrogated or even questioned.

Cuevas-Almonte's invocation of the history surrounding the Declaration of Independence is even less helpful to his as-applied challenge. In the years leading up to the American Revolution, Parliament revived an ancient statute under which colonists accused of treason could be transported across the Atlantic for trial in England or in another distant colony. *See* William Wirt Blume, *The Place of Trial of Criminal Cases: Constitutional Vicinage and Venue*, 43 Mich. L. Rev. 59, 63–64 (1944). Resentment against such measures ran so deep that the Founding Fathers explicitly denounced King George III in the Declaration of Independence "[f]or transporting [the colonists] beyond Seas to be tried for pretended offenses." The Declaration of Independence para. 21 (U.S. 1776).

Yet Cuevas-Almonte's situation is nearly the opposite—he was brought *from* the high seas to be tried in a nearby district within the United States. He was not taken from the district where he committed a crime and transported "beyond seas" to be tried "in Utah or Idaho, which are landlocked and are thousands of miles away." Appellant's Br. at 14. Nor was he dragged to "Guam, which is literally halfway around the world." *Id.* Even more to the point, Cuevas-Almonte cannot explain how exactly the "first brought" provision of Section 3238—or the Crimes Act of 1790 for that matter—protect against this colonial-era concern. Would a trial in the District of Alaska for a crime committed in the middle of the Atlantic Ocean not comply with his supposed constitutional limitation so long as the defendant was first brought there? Nor does he

22

reconcile that, under his theory, Section 3238 would still permit prosecution in Guam for an offender apprehended on the high seas south of Puerto Rico, transported through the Panama Canal, and first brought into Guam's territorial waters. In other words, it is difficult to see how the "first brought" venue concept for high seas crimes remedies the colonial-era complaints of trials in a distant, foreign land.

We agree with Cuevas-Almonte that the Constitution "twice safeguards the defendant's venue right," and "the constitutional limitations on venue are extraordinarily important." *United States v. Auernheimer*, 748 F.3d 525, 540 (3d Cir. 2014) (quoting *United States v. Cabrales,* 524 U.S. 1, 6 (1998)). But the Supreme Court has instructed that Article III, section 2, clause 3 and the Sixth Amendment do not create a limitation on venue for offenses committed not within any state that would render the MDLEA's venue provision unconstitutional as applied here. *See Cook*, 138 U.S. at 181–82. We are duty-bound to follow that precedent until guided otherwise. We therefore hold that 46 U.S.C. § 70504(b)(2) is constitutional as applied to Cuevas-Almonte. Because the provision is constitutional as applied to him, we also hold that his facial challenge fails. *See Mitchell*, 652 F.3d at 415. The District Court therefore did not err in rejecting Cuevas-Almonte's argument that Section 70504(b)(2) is unconstitutional and denying his motion to dismiss for improper venue on that ground.

## III.  CONCLUSION

For the foregoing reasons, we will affirm the District Court's orders.

23